230 P.2d 235

## STATE v. SCARBOROUGH.

### No. 5352.

Supreme Court of New Mexico.

April 9, 1951.

Otto Smith, Clovis, for appellant.

Joe L. Martinez, Atty. Gen., Hilario Rubio, Asst. Atty. Gen., for appellee.

SADLER, Justice.

The defendant was convicted of rape in the district court of Curry County and sentenced to a term in the penitentiary. He prosecutes this appeal in an effort to secure a new trial. Two grounds of reversal are set up, the first claiming error in the trial court's refusal of a specially requested instruction touching the effect of extreme intoxication as producing temporary impotency, thereby rendering it unlikely that he could or would have committed the offense charged. The second, indeed, only other error claimed, is the trial court's action in overruling an objection to a statement in evidence by the prosecuting witness of what she told the officer in charge at police headquarters in telephoning for help following the assault. The errors claimed will be treated in the order just stated.

There being no challenge to sufficiency of the evidence to support the verdict of guilty, it may be taken as established that the rape charged was in fact committed by defendant, notwithstanding his denial. It occurred some time between 10:30 o'clock at night and 2:00 o'clock the following morning at the apartment of the prosecuting witness where the police, in response to a telephone call from her, found defendant lying on her bed, seemingly in a drunken sleep or stupor. The evidence was that, prior to being thus found, he had severely beaten the prosecuting witness, a young woman 22 years of age, had disrobed her and had committed two criminal assaults upon her.

Before coming to the apartment earlier in the evening, the prosecuting witness in the company of a young man and another young woman with her male companion had been to a place described as a "bootleg joint" where beer was served and during the evening had come across the defendant, who had been drinking. He attached himself to their party and accompanied the prosecuting witness and her companion to her apartment. She knew him only slightly, having served him on one or two occasions in the restaurant where she was employed as a waitress. Soon after arriving at the

apartment the young man mentioned was ordered away by the defendant and he departed. The assault charged took place after his departure.

The defendant claimed to have only slight recollection of what transpired in the apartment following his arrival there. He did recall a statement to the prosecuting witness expressing regret that he had not taken her to a bowling alley that evening. He further testified he had been drinking heavily and that, after listening to the playing of some phonographic records for a short time, he became drowsy and just "passed out." He said he could remember nothing else that happened until the officers arrived and awakened him, as already related. The state disputes his claim that he had taken enough liquor, even according to his own admissions, to put him in a state of coma and asserts that, even if he had, it would furnish no defense to the charge of which he stands convicted.

■ We agree with the state's contention that voluntary intoxication constitutes no defense to a charge of rape. 44 A.J. 926; 52 C.J. 1038; State v. Murphy, 118 Mo. 7, 25 S.W. 95, 97; Steele v. State, 189 Tenn. 424, 225 S.W.2d 260. Cf. People v. Avanzi, 25 Cal.App.2d 301, 77 P.2d 237; People v. Denningham, 82 Cal.App.2d 117, 185 P.2d 614; State v. Huey, 14 Wash.2d 387, 128 P.2d 314.

In State v. Murphy, supra, the Supreme Court of Missouri disposed of a contention like that here made in the following language, to-wit: "There was no error in the fifth instruction, which told the jury that, although they might believe defendant was intoxicated at the time of the rape, yet, if the intoxication was voluntary on his part, it constituted no excuse in the law for the crime charged, if the jury found from the evidence that it was committed as charged. This has always been the law of this state, and is yet."

The opinion in Steele v. State, supra, where two defendants were under a sentence of death for rape committed by each upon an elderly woman, applies the same doctrine as that followed in the Missouri decision quoted from, next above. The court said: "The intoxication of the defendants will not mitigate the crime in a case of this nature. Walden v. State, 178 Tenn. 71, 156 S.W.2d 385. That case holds directly that intoxication is of no value except in cases where a specific intent to commit the crime is necessary, and that in case of criminal assault, no intent is requisite other than that evidenced by the doing of the acts constituting the offense." [189 Tenn. 424, 225 S.W.2d 262.]

■ The trial court did not err in declining to give the defendant's specially requested instruction touching the effect of

his voluntary intoxication. It constituted no defense to a charge of rape.

It is next claimed the trial court erred in permitting the prosecuting witness to state in evidence what she said to the officer at police headquarters upon telephoning there for help. It is to be remembered that immediately preceding this call the witness mentioned had regained consciousness from blows on the head and face by defendant to find herself completely disrobed, lying on the bed beside the defendant who committed two acts of sexual intercourse with her, by force, and then "passed out," to use his own description of his condition. It was on the heels of such a terrifying experience that, for the second time, she regained consciousness only to find the defendant still lying on the bed beside her, himself now in a state of seeming unconsciousness. The following interrogation of the witness took place, to-wit:

"Q. Where were you lying when you regained consciousness the last time you mentioned? A. I was laying on the, sort of on the front of the bed.

"Q. Was that near the wall or— A. No sir.

"Q. —more out into the room? A. No sir, more out into the room.

"Q. What if anything did you do? A. Well, sir, I didn't know what to think when I came to and I thought about calling the police, and I thought well, if he came to and I was calling them that he would beat me more and so I slipped off the bed, and I didn't have strength enough to walk, so I crawled to the bathroom and kinda held myself up against the furniture. There was a pair of jeans and sweater that I had in the bathroom that I had pulled off that afternoon before I taken my bath, and I slipped them on the best I could, and then I went back and when I stuck my head out of the bathroom door, he was sort of snoring, and so I slipped back in there and dialed the operator and told her to get me the police.

"Q. Where was that phone Nell with reference now to where the Defendant was lying? A. It wasn't very far from his head, sir.

"Q. Did you dial the operator there beside the bed? A. No sir, I picked the phone up and pulled it over on the cedar chest.

"Q. And what did you tell the operator?

"Mr. Smith: Just a minute, we object to that as being inadmissible, she has testified that she made the report.

"The Court: Overruled.

"Mr. Smith: Exception.

"A. Will you repeat that again, sir?

"Q. What did you tell the operator, or did you get the operator? A. I was scared

to death, sir, and I don't remember exactly what I told the operator, but—

"Q. Did the operator connect you with any number? A. Yes sir, she connected me with the police.

"Q. And did you report this incident to the police or did you request that someone come out, or what did you tell them? A. I believe I asked them to come out and help me, that there was a man beating me to death or something like that.

"Q. Now, did the police get there? A. Yes sir.

"Q. Do you know how long it was before they got there? A. It was just a few minutes, sir."

It is this portion of the answer of the witness to which defendant's counsel so strenuously objects: "A. I believe I asked them to come out and help me, that there was a man beating me to death or something like that."

■ It must be admitted that the statement of the witness to the police officer, made over the telephone, seems vague and indefinite, if not bordering on incoherency. Certainly, it suggests the strain under which she labored following the terrible experience she had just undergone. We think it comes within the test of admissibility laid down in State v. Godwin, 51 N.M. 65, 178 P.2d 584, and our earlier decisions discussed in the opinion in that case.

Finding no error, the judgment of the district court will be affirmed.

It is so ordered.

LUJAN, C. J., and McGHEE and COMPTON, JJ., concur.

COORS, J., being absent, did not participate.