STATE

v.

Roger BRYANT.

No. 94–273–C.A.

Supreme Court of Rhode Island.

Jan. 31, 1996.

Annie Goldberg, Aaron Weisman, Asst. Attys. General, for Plaintiff.

Janice Weisfeld, Paula Rosin, Asst. Public Defenders, for Defendant.

## OPINION

WEISBERGER, Chief Justice.

This case comes before us on the appeal of the defendant, Roger Bryant, from a judgment of conviction entered in the Superior Court on three counts of first-degree child-molestation sexual assault and one count of second-degree child-molestation sexual assault upon a five-year-old child to whom for purposes of this opinion we shall refer as Susan (not her true name). We sustain the appeal in part and deny it in part. The facts of the case insofar as pertinent to this appeal are as follows.

The defendant at the time of the incident in question was residing in the city of Pawtucket with his wife, Sharon, and her three children, Susan, Thomas, and John (not their true names). Susan and Thomas were born to Sharon in a former marriage. The defendant's adopted daughter, Jean, learned from Susan that defendant may have sexually molested her. She confronted him with this information, and ultimately he admitted to Jean that he had shown Susan the difference between a good and a bad touch.

At trial, the evidence in support of the indictment tended to show that defendant had at some time between October 1991 and January 20, 1992, persuaded Susan to penetrate her own vaginal area with her finger (count 1). The evidence also tended to show that defendant had digitally penetrated Susan's vaginal area between October 31, 1991, and January 20, 1992 (count 2). The evidence also tended to show that defendant engaged in sexual penetration, to wit, anal intercourse with Susan between October 31, 1991, and January 20, 1992 (count 3). The evidence further tended to show that defendant on the same dates engaged in sexual contact with Susan in violation of G.L.1956 (1981 Reenactment) § 11–37–8.3, as amended by P.L.1988, ch. 219, § 1 and § 11–37–8.4, as amended by P.L.1984, ch. 59, § 2, second-degree sexual assault (count 4).

Susan testified concerning these events, and the state also presented several witnesses, including Susan's mother, who authenticated a letter written by defendant to one Thomas Hill. The state presented Detective Michael Malloy of the Pawtucket police department who interrogated defendant at the police station to which he was transported from Rhode Island Hospital after defendant had attempted suicide by slashing his wrists in a motel room. Further facts will be supplied in respect to this interrogation in the discussion of evidence submitted on a motion to suppress.

In support of his appeal, defendant raises five issues. These issues will be considered in the order in which they were raised in defendant's principal brief and in a supplemental brief later filed. Further facts will be supplied as necessary to deal with these issues.

### I

Did Count 1 Allege A Violation of G.L.1956 (1981 Reenactment) § 11–37–8.1?

Count 1 of the indictment charged defendant with engaging in the digital penetration of Susan in violation of § 11–37–8.1, as amended by P.L.1988, ch. 219, § 1. The evidence in support of this count of the indictment, when considered in the light most favorable to the state, establishes that Susan at the suggestion of defendant inserted her

own finger into her vaginal area. There was no evidence in support of this count that defendant digitally penetrated Susan's vaginal orifice. Consequently defendant contends that his motion for judgment of acquittal should have been granted by reason of the fact that no violation of the statute was proven.

Section 11–37–8.1 defines the crime of first-degree child-molestation sexual assault in the following terms: "A person is guilty of first degree child molestation sexual assault if he or she engages in sexual penetration with a person fourteen (14) years of age or under." In § 11–37–1(8), as amended by P.L.1986, ch. 191, § 1 sexual penetration is defined as follows:

" 'Sexual penetration'—sexual intercourse, cunnilingus, fellatio, and anal intercourse, or any other intrusion, however slight, by any part of a person's body or by any object into the genital or anal openings *of another person's body,* but emission of semen is not required." (Emphasis added.)

The defendant argues that the evidence submitted in support of this count clearly shows that Susan penetrated her own body and that defendant did not commit any penetration of her body incident to this episode. The only evidence of defendant's participation was to the effect that defendant told Susan to insert her finger into her vaginal orifice. This is an issue of first impression in our interpretation of this statute.

■ Our canons of construction of statutes have often been defined. Generally when a statute expresses a clear and unambiguous meaning, the task of interpretation is at an end and this court will apply the plain and ordinary meaning of the words set forth in the statute. *See, e.g., Rhode Island Chamber of Commerce v. Hackett,* 122 R.I. 686, 690, 411 A.2d 300, 303 (1980); *State v. Healy,* 122 R.I. 602, 607, 410 A.2d 432, 434 (1980); *State v. Angell,* 122 R.I. 160, 170, 405 A.2d 10, 15 (1979); and *First Republic Corp. of America v. Norberg,* 116 R.I. 414, 418, 358 A.2d 38, 41 (1976). It is also a canon of statutory construction that the Legislature is presumed to have intended each word or provision of a statute to express a significant meaning, and the court will give effect to

every word, clause, or sentence, whenever possible. *State v. Reis,* 430 A.2d 749, 752 (R.I.1981); *Flanagan v. Pierce Chevrolet, Inc.,* 122 R.I. 596, 601, 410 A.2d 428, 431 (1980). Additionally "penal statutes must be strictly construed in favor of the party upon whom a penalty is to be imposed." *State v. Calise,* 478 A.2d 198, 200 (R.I.1984); *Eaton v. Sealol, Inc.,* 447 A.2d 1147, 1148 (R.I.1982).

Applying the foregoing canons of construction, we are of the opinion that the state did not prove a violation of the conduct prohibited by § 11–37–8.1 as defined in § 11–37–1. In that definition "sexual penetration" is clearly and unambiguously defined as "intrusion, however slight, by any part of a person's body or by any object into the genital or anal openings of *another person's body* * * *." Section 11–37–1(8). (Emphasis added.)

■ The trial justice in effect amended this definition by including therein an interpretation that defendant engaged in sexual penetration by directing the child to insert her own finger into her vaginal orifice. Unfortunately, neither the trial justice nor this court has any authority to supplement or to amend a statute enacted by the General Assembly. *State v. Calise,* 478 A.2d at 201. Statutes from numerous other states have been cited that make it a crime to cause another person to penetrate his or her own body. *See, e.g.,* New Jersey Code of Criminal Justice §§ 2C:14–1(c), which defines sexual penetration as "vaginal intercourse, cunnilingus, fellatio or anal intercourse between persons or insertion of the hand, finger or object into the anus or vagina either by the actor *or upon the actor's instruction."* (Emphasis added.) N.J.Stat.Ann. § 2C:14–1(c) (West 1982 & Supp.1995). Similar provisions are found in the N.H.Rev.Stat.Ann. § 632–A:1 V (Supp.1994), Va.Code Ann. § 18.2–67.2A (Michie 1950 & Supp.1995), and Minn. Stat. § 609.341 Subd. 12(2)(ii) (1994). We respectfully recommend to the General Assembly its consideration of an amendment to the statute to include provisions similar to those which have been adopted by the foregoing jurisdictions.

Consequently cases from these jurisdictions that have upheld a conviction of sexual assault when a defendant causes another person to penetrate his or her own body are not applicable or persuasive in interpretation of the Rhode Island statute. Applying our familiar standards of interpretation as set forth above, we are constrained to conclude that the state did not present evidence in support of count 1 of the indictment and that, therefore, the trial justice erred in declining to grant a motion for judgment of acquittal in respect to that count.

## II

### The Motion To Suppress

■ When defendant learned that criminal charges against him were imminent for child molestation, he went to a motel in Seekonk, Massachusetts, on the night of February 15, 1992. He testified in support of his motion to suppress that he drank a large quantity of vodka and slashed his wrists. Other evidence indicates that he wrote a farewell note to his family. He was transported by the Seekonk rescue personnel to Rhode Island Hospital where he was treated and his condition stabilized. Shortly after midnight on February 16, 1992, Officer James Forrestal of the Pawtucket police department came to the hospital and found defendant awake in bed with his wrists bandaged. At about 3:20 a.m., three Pawtucket officers including Forrestal transported defendant from the hospital to the Pawtucket police station. The defendant was not interrogated until 10 a.m. on the morning of February 16. Thus his interrogation began approximately fifteen hours after his consumption of vodka and his attempt at suicide.

The interrogation was tape-recorded and memorialized the fact that defendant had been given his *Miranda* admonitions and that he had executed a written waiver of his right to remain silent and his right to counsel. The defendant acknowledged on the tape that he had signed the written waiver. Police Detective Michael Malloy spoke on the tape, read the waiver provision, and asked defendant if he understood his rights as they were read to him. The defendant answered that he did. The defendant further agreed to speak to Detective Malloy. He acknowledged that he had been allowed to communicate with his wife by telephone. He also acknowledged that no threats or promises had been made to him by the Pawtucket police. The conduct of the police incident to this interrogation was impeccable, and the officers observed all defendant's constitutional rights. Nevertheless, defendant argues that he was not mentally or emotionally equipped to care about his legal rights and that, therefore, his waiver was not voluntary, knowing, and intelligent. The trial justice who listened to the tape found that the conversation on defendant's part was "in natural tones and as unemotional as people's voices could sound." During the suppression hearing the trial justice noted that defendant conceded that he understood each of the *Miranda* warnings.

Although defendant cites a number of cases relating to the effect of mental incapacity upon waiver of constitutional rights, these cases do not apply in light of the factual findings of the trial justice. He found, considering all the circumstances, that he was satisfied "beyond a reasonable doubt let alone by clear and convincing evidence, that the defendant here understood clearly each of the *Miranda* rights which were read to him at least twice and as appeared to him on the form which he initialed on a number of occasions and signed, and that with that awareness and with full understanding of the consequence of his conduct he waived these rights and gave a statement." The trial justice went on to find again beyond a reasonable doubt that the statement was made voluntarily.

■ Given our deferential standard of review on factual findings as set forth in *State v. McLaughlin*, 621 A.2d 170, 180 (R.I.1993), and *State v. Pacheco*, 481 A.2d 1009, 1016 (R.I.1984), we hold that the evidence overwhelmingly supports the trial justice's clear finding that defendant made his statement voluntarily, that no force or coercion was imposed upon him, and that he was neither intoxicated nor mentally incapacitated in any way. Thus we need not explore the effect of the Supreme Court's holding in *Colorado v.*

*Connelly,* 479 U.S. 157, 170, 107 S.Ct. 515, 523, 93 L.Ed.2d 473, 481 (1986), which indicated that official coercion and not a delusional command from the voice of God would be necessary to render an inculpatory statement involuntary. No such factual issue is presented by this case.

The trial justice did not err in declining to grant defendant's motion to suppress.

## III

### The Expert Witness

■ The defendant contends that the trial justice erred in admitting Nurse Practitioner Annie O'Connor (O'Connor) to testify as an expert witness concerning reflex relaxation of the rectal sphincter muscles. O'Connor, who is a registered nurse and pediatric nurse practitioner, further testified that the reflex relaxation was an indication that the child, Susan, may have been sexually abused. The trial justice found her qualified and permitted her to testify concerning this subject matter as an expert witness.

O'Connor's background included the following education and experience. At the time of trial she had been a registered nurse serving in the area of pediatrics for fifteen years. After ten years of service, she obtained a master's degree and successfully passed a national examination to be certified as a nurse practitioner in pediatrics. She testified that nurse practitioners are allowed to diagnose, to prescribe medicine, and to treat patients independently. She also testified to having completed specialized training in diagnosing child sexual abuse at Boston's Children's Hospital, Boston City Hospital, and Montefiore Hospital in New York.

By way of experience she testified to having examined between 500 and 600 children suspected of having been sexually abused and having made diagnoses concerning the probability of such abuse. O'Connor had published a number of articles relating to physical findings in sexual-abuse cases. At the time of trial she was engaged as co-director of the child-abuse program at Rhode Island Hospital. She stated that her primary responsibility was to educate or train resident physicians in the techniques of examining children for symptoms of child abuse. Since the hospital had not had any person qualified to train residents in this field, she was recruited specifically for that purpose.

After hearing her educational qualifications and her background experience, the trial justice ruled "that this witness is qualified to testify as an expert in the field of examination of children for physical signs and symptoms of sexual abuse." The trial justice advised counsel, however, that he would rule upon specific questions in the event that the witness was asked to testify to matters beyond the field of her expertise.

In substance, the witness testified concerning reflex relaxation of the rectal sphincter muscles, which would indicate anal sexual penetration as a probable cause when the buttocks of a child did not constrict after separation but would stay relaxed. She said that a similar relaxation of the sphincter muscles might be caused by severe chronic constipation. In her opinion sphincter-reflex relaxation would be caused only by sexual abuse or constipation.

The defendant argues that pursuant to Rule 702 of the Rhode Island Rules of Evidence only physicians would be qualified to testify concerning the significance of physical findings in diagnosing sexual abuse.

■ Generally in this jurisdiction the admission of expert testimony lies in the sound discretion of the trial justice. *State v. Capalbo,* 433 A.2d 242, 246 (R.I.1981); *Leahey v. State,* 121 R.I. 200, 202, 397 A.2d 509, 510 (1979). Rule 702 states the criteria for admission of expert testimony as follows:

> "**Testimony by Experts.**—If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of fact or opinion."

■ The language of Rule 702 places emphasis upon the value of expert testimony in assisting the trier of fact to understand the evidence or to determine a fact in issue. *Id.*

The Advisory Committee Notes point out that helpfulness to the trier of fact is a crucial issue. *Id.* Expert testimony should be allowed on nearly any subject as long as it is beyond the understanding of laypersons of ordinary intelligence. *See, e.g., Young v. Park,* 417 A.2d 889, 893 (R.I.1980); *State v. Benton,* 413 A.2d 104, 112 (R.I.1980); *Morgan v. Washington Trust Co.,* 105 R.I. 13, 17–18, 249 A.2d 48, 51 (1969). There seems little doubt that O'Connor had significant training and experience in the diagnosis of physical manifestations of child abuse. Her position as an educator of and an instructor to physician residents in the area of diagnosis of child abuse was eloquent testimony to her qualifications in that field. It was also noted by the trial justice that she had testified in respect to sexual abuse in other courts in Rhode Island as well as in the Commonwealth of Massachusetts. Her testimony was limited to the field of her expertise and was certainly of assistance to the jury in determining a matter outside the common ken. *State v. Chiellini,* 557 A.2d 1195, 1201 (R.I.1989), *overruled on other grounds, State v. Werner,* 615 A.2d 1010, 1012 (R.I.1992); *State v. Usenia,* 599 A.2d 1026, 1033 (R.I. 1991).

In relying on her training, experience, and education, the trial justice acted well within his discretion in admitting O'Connor's expert testimony in the area of physical manifestations of anal penetration. He committed no error in so doing.

## IV

### The Motion For Mistrial

■ The defendant contends that the trial justice erred in declining to grant his motion for a mistrial when counsel for the state in final argument referred to the reflex relaxation syndrome as indicative of anal penetration "on more than one occasion." It should be noted that defendant was charged with only one incident of anal penetration. The prosecutor also referred to a letter written by defendant in which he referred to "acts" having started around November 1991. The defendant had represented to the police and to the jury that only one improper act had occurred, namely, his penetration of the

vulva with his finger. Counsel for defendant also generally argued at the conclusion of the final charge as an additional ground for mistrial that the prosecutor made reference in closing arguments to uncharged acts including certain acts relating to dismissed counts. Although the trial justice agreed that reference to the dismissed counts may have been improper, he did not see them as so inflammatory or prejudicial as to warrant a mistrial. At this point the trial justice offered to give a cautionary instruction if desired by counsel for defendant. Counsel declined.

In his instructions to the jury given prior to final argument, the trial justice pointed out to the jury that counsel and the court, in summarizing evidence, may have less-than-perfect memories and suggested that if their statements in regard to facts did not comport with the jury's recollection, the jury should rely upon their recollection and not that of counsel or even of the court.

Given the totality of evidence in the case in the light of final argument, we reaffirm that the standard of review for the granting or denial of a mistrial is that of abuse of discretion. *State v. Brown,* 522 A.2d 208, 210 (R.I.1987). In that case we also pointed out that the granting of a mistrial would only be required if improper conduct could have so inflamed the passions of the jurors as to prevent their calm and dispassionate examination of the evidence. *Id.* at 211.

We cannot say that the trial justice in this instance abused his discretion in declining to grant the motion for mistrial or was otherwise clearly wrong.

## V

### The Jury Instructions

■ The defendant contends that he is entitled to a new trial by reason of the failure of the trial justice to instruct the jurors in relation to the act of sexual penetration in accordance with the principles enunciated in *State v. Griffith,* 660 A.2d 704 (R.I.1995). That case in respect to digital penetration required that the trial justice instruct the jury that such penetration must be carried out with the intent of sexual arousal or grati-

fication in order for the necessary element of *mens rea* to be established in a charge of first-degree sexual assault. *Id.* at 706. This holding was made with the full realization that the statute for first-degree sexual assault, unlike the statute in respect to second-degree sexual assault, does not contain the words "sexual arousal or gratification." *Id.* In *Griffith* we formalized the need for such an instruction to establish the element of *mens rea* because "[a]bsent such instruction the jury could have convicted defendant because of an innocent touching." *Id.* at 707.

 It is undisputed that in the case at bar the trial justice instructed the jurors that first-degree child molestation does not require them to find a purpose of sexual gratification or arousal since such sexual gratification or arousal is not an element of the offense. It was also undisputed that no specific objection was raised to this aspect of the trial instruction. Normally under our raise-or-waive rule the absence of an objection would result in failure to preserve this issue for appeal. *See State v. Medeiros,* 599 A.2d 723, 727 (R.I.1991); *State v. Tillinghast,* 465 A.2d 191, 198 (R.I.1983). However, we recognize an exception to our raise-or-waive rule when the issue at trial is based upon a novel rule of law of which counsel could not have reasonably known at the time of trial. As we point out in *State v. Burke,* 522 A.2d 725 (R.I.1987), "when an intervening decision of this court or of the Supreme Court of the United States establishes a novel constitutional doctrine, counsel's failure to raise the issue at trial will not preclude our review." *Id.* at 731. *See also State v. Estrada,* 537 A.2d 983, 987 (R.I.1988). In the case at bar, defendant meets the test delineated in *Burke.* First, the error cannot be claimed to be harmless. *Burke,* 522 A.2d at 731. Second, the record is completely sufficient for the purpose of appellate review, *id.,* since defendant testified to the innocent purpose of his touching and the trial justice instructed that the innocent purpose was irrelevant. Third, an intervening decision of this court established a new element of the crime charged of which trial counsel could not have been aware. *Id.*

We are of the opinion that *State v. Griffith* is controlling on this issue. We recognize that at common law the crime of rape was a general-intent crime. *See State v. Scarborough,* 55 N.M. 201, 203, 230 P.2d 235, 236 (1951); *State v. Murphy,* 118 Mo. 7, 16, 25 S.W. 95, 97 (1893); *Steele v. State,* 189 Tenn. 424, 430, 225 S.W.2d 260, 262 (1949). The elements of common-law rape did not include a purpose of sexual gratification or arousal but only required "the act of sexual intercourse committed by a man with a woman not his wife and without her consent, committed when the victim's resistance is overcome by force or fear, or under other prohibited conditions." *State v. Golden,* 430 A.2d 433, 435 (R.I.1981). However, when the common-law crime of rape was modified to first-degree sexual assault, the new offense included "sexual penetration" or "any other intrusion, however slight, by any part of a person's body or by any object into the genital or anal openings of another person's body * * *." *Griffith,* 660 A.2d at 705. In analyzing this statutory definition in *Griffith,* we concluded that necessity required an instruction concerning sexual arousal or gratification in order to preclude the possibility that a defendant could be convicted because of an innocent touching. *Id.* at 707. At common law this possibility would not exist since nothing short of penile penetration was sufficient in order to constitute the offense of rape. *Golden,* 430 A.2d at 435.

 We reaffirm the general principle that obtained in respect to common-law rape that purposeful penile penetration precludes a finding of innocent touching. This principle would be applicable under our present statute whether the penile penetration were anal or vaginal. Thus nothing we state in respect to count 2 would be applicable to count 3 where anal penetration by the penis was charged and found to have occurred.

In respect to count 2, however, which charged digital penetration and in respect to which the defendant clearly contended that it was an innocent touch, he was entitled to the benefit of our decision in *State v. Griffith.* Obviously the trial justice was not aware of this decision since it was rendered after the current trial had concluded. Nevertheless,

the defendant is entitled to a new trial in respect to count 2 in which an instruction in respect to sexual gratification or arousal will be included as an element of the offense.

For the reasons stated, the defendant's appeal is sustained in respect to count 1 wherein he was entitled to a judgment of acquittal; his appeal is sustained in regard to count 2 by reason of his entitlement to a new trial with a jury instruction on the issue of sexual arousal or gratification; the other grounds of appeal are denied and dismissed, and his conviction in respect to counts 3 and 4 is affirmed. The papers in the case may be remanded to the Superior Court for further proceedings consistent with this opinion.

BOURCIER, Justice, with whom LEDERBERG, Justice, joins, concurring in part and dissenting in part.

I join in the opinion of the court with regard to its conclusion that G.L.1956 (1981 Reenactment) § 11–37–1(8), as amended by P.L.1986, ch. 191, § 1, by its specific definition of the nature of sexual penetration necessary to constitute first-degree child molestation sexual assault, excludes the conduct engaged in by the defendant in this case.

I agree with the majority's recognition of our longstanding judicial inability, no matter how abhorrent the offense involved, to supplement or to amend by judicial interpretation the clear and unambiguous language in § 11–37–1(8) as enacted by the General Assembly. *State v. Young*, 519 A.2d 587, 588 (R.I.1987); *State v. Calise*, 478 A.2d 198, 201 (R.I.1984); *State v. Caprio*, 477 A.2d 67, 71 (R.I.1984). It is precisely for that reason, however, that I respectfully dissent from that part of the majority's opinion in which it reaffirms this court's previous holding in *State v. Griffith*, 660 A.2d 704 (R.I.1995).

In *Griffith*, this court did by its liberal construction of a criminal statute actually supplement and amend the § 11–37–1(8) it now finds here to be both clear and unambiguous. The court did there what in this case it said could not be done. The court in *Griffith* read into the § 11–37–1(8) definition of the term "sexual penetration" an additional nonstatutory element for *first-degree* child molestation sexual assault when it read into that statute the obligation of the state to prove beyond a reasonable doubt that the accused's sexual penetration had to be for the express purpose of his sexual arousal or gratification.

Our first-degree sexual assault statutes [1] are in reality nothing more than the embodiment of the elements of common law rape, which in fact had been incorporated into legislation in our former rape statute, G.L. 1956 (1969 Reenactment) § 11–37–1. *State v. Golden*, 430 A.2d 433, 435 (R.I.1981). This court acknowledged that fact in *State v. Babbitt*, 457 A.2d 1049, 1054 (R.I.1983), when the late Justice Kelleher, writing for the court, said:

"Although we have said that the new law changed the statutory framework of sexual offenses, *State v. Malouin*, R.I., 433 A.2d 176, 177 (1981), it is quite obvious that the common-law crime of rape was embodied in the new statute. A parallel reading of the two statutes clearly indicates that every element needed to prove a violation under the old statute for rape is also needed to prove first-degree sexual assault under the new statute. The new statute merely expands the meaning of sexual penetration by force to include, in addition to sexual intercourse, the intrusion of any part of a person's body into the genital or anal openings of another person's body. Section 11–37–1."

Again, in *State v. McDonald*, 602 A.2d 923, 926 (R.I.1992), we said,

"We believe that the only reasonable interpretation of this statutory scheme is to attribute to the Legislature the intent to substitute for the word 'rape' that crime which was later defined as first-degree sexual assault, not any of the lesser degrees that describe differing, and in some instances, less serious, offenses."

At common law, the crime of rape never required proof that the carnal knowledge or the penetration necessary to constitute the crime was for the purpose of sexual arousal or gratification. *3 Wharton's Criminal Law,*

§§ 283–298 (14th ed. Torcia 1980). The General Assembly, when it enacted our comprehensive sexual assault statute, specifically defined what it intended and meant for "sexual penetration" to mean within the framework of the first-degree sexual assaults prohibited therein. Section 11–37–1(8). The General Assembly's definition of the term "sexual penetration" is both clear and unambiguous and must accordingly be strictly construed as the court's majority does today in this case. I am hard-pressed, however, to find permissible inference from the wording of § 11–37–1(8) that enables the majority to reaffirm *Griffith.* I find nothing in § 11–37–1(8) that indicates any intention on the part of the General Assembly to make any alteration in the common law definition of rape as that crime was known at common law, or in our former rape statute § 11–37–1 prior to 1979,[2] so as to include an element of sexual arousal and gratification on the part of the perpetrator and, additionally, to impose upon the state the burden of proving that intended state of mind to a jury. Such an inference or assumption from the language used by the General Assembly violates what I believe to be our longstanding rule of statutory construction as pertains to altering the common law. *Bloomfield v. Brown,* 67 R.I. 452, 458, 25 A.2d 354, 357 (1942). Apparently, this court believed in 1989, as I do now, that first-degree child molestation sexual assault did not include any obligation on the part of the state to prove to a jury beyond a reasonable doubt that the accused, in sexually penetrating the four-year-old victim there, was doing so for his own personal sexual arousal and gratification. *State v. Girouard,* 561 A.2d 882, 889 (R.I.1989). In *Girouard,* Justice Murray correctly noted:

"There are two essential elements to first degree child molestation sexual assault. First, the defendant must have engaged in sexual penetration of the victim. Second, the victim was age thirteen or younger." *Id.*

I conclude from the clear and unambiguous statutory language contained in § 11–37–2 defining first-degree sexual assault and in § 11–37–8.1 defining first-degree child molestation sexual assault that there is absolutely no requirement that the sexual penetration prohibited therein must be for the sexual arousal or gratification of the perpetrator, except for the specific occasion during which the accused engages in the medical treatment or examination of the victim for the purpose of sexual arousal, gratification, or stimulation. The statute states that conclusion both clearly and distinctly. Section 11–37–2(4).

In all other statutory instances of first-degree sexual assault, the statutes focus upon prohibiting the act and punishing for the wrong and the harm inflicted upon the victim as the result of the unlawful sexual penetration by the perpetrator. That legislative focus is not dependent upon the question of whether the perpetrator at the time of the penetration was sufficiently aroused and gratified. Penetration, not gratification, composes the basic element in first-degree sexual assault. The perpetrator of such crimes should not, in my opinion, be the beneficiary of any judicially implied protection from prosecution based upon sexual arousal and gratification considerations that have been specifically and clearly omitted from the wording of Section 11–37–1(8) by the General Assembly.

As I review our sexual assault statutes, I find therein that the only instance in which the sexual arousal and gratification factor becomes an element of any particular sexual contact assault crime is for those criminal actions that constitute second-degree sexual assault. Section 11–37–4(3). All those second-degree sexual assaults, however, specifically involve only unlawful *sexual contact* and not *sexual penetration.* *State v. Messa,* 594 A.2d 882, 884 (R.I.1991).[3]

I believe that when the General Assembly undertook to enact chapter 37 of title 11 and to provide for its comprehensive prohibition of sexual assault crimes in this state, it intended and expected that its legislative language would be interpreted in light of, and

2. Public Laws 1979, ch. 302.

3. A.L.I. Model Penal Code part II § 213.4 (Proposed Official Draft 1962).

with specific reference to, the definition of its words and phrases as found in § 11–37–1.

I read § 11–37–1(8) differently than as was done in *State v. Griffith,* and differently than does the majority today in reaffirming *Griffith. State v. Neary,* 122 R.I. 26, 31–32, 404 A.2d 65, 68–69 (1979).

For the above reasons, I respectfully dissent from that portion of the majority's opinion wherein *State v. Griffith* is reaffirmed.

In all other aspects of the majority's opinion, I concur and join therein.