[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This matter is an administrative appeal from a decision of the Department of Health (hereinafter "DOH"), granting The Miriam Hospital (hereinafter "Miriam") a Certificate of Need ("CON") to reorganize and renovate its surgical services department. Grant Dulgarian and Summit Neighborhood Association, (hereinafter collectively "Summit"), appeal the decision based on their standing as "affected persons" according to G.L. 1956 §23-15-2(1) and R23-15-CON, Section 3.21. After reviewing the entire record, the Court affirms the decision of the DOH pursuant to G.L. 1956 § 42-35-15.
 FACTS AND TRAVEL
On June 10, 2002, Miriam applied to the DOH for a CON in compliance with the Health Care Certificate of Need Act of Rhode Island, enacted as G.L. 1956 § 23-15-1 et. seq. Miriam sought approval to reorganize and renovate its surgical services department in order to meet recommended industry standards. The renovations proposed entail demolishing two buildings (designated E and F) and building a 49,000 gross square foot facility adjacent to building C, which currently houses the surgical unit on the first floor. The existing use of building C would be renovated to expand the current "prep and holding unit" and diagnostic services unit. The new building would be two stories high. The proposed cost of the project is $25,184,167. funded entirely by equity.
DOH notified approximately 250 people that it deemed "affected persons" under the statute, and also published a notice in TheProvidence Journal. A deadline of August 29, 2002 was set for comments or requests for public meetings.
Summit requested a public meeting; the DOH scheduled and held three meetings in September. The testimony of Kathleen Hittner, M.C., President of the Miriam Hospital, was presented on September 12, 2002. Summit presented its testimony at the next meeting, September 16, 2002. At both of these meetings, all parties were encouraged to, and did, participate fully. The parties then had a "site view" on September 24, 2002. The final meeting was held on October 31, 2002, at which closing remarks were made. In the interim between the last two meetings, Miriam was presented with written questions to which they were required to respond. These materials were also added to the record. This first series of meetings were presided over by an administrative hearing officer, appointed by the director of the DOH in compliance with G.L. 1956 § 23-15-6(10) and R23-15-CON, § 10.3(b); several members of the Health Services Council ("Council") were also present. The Health Services Council is the advisory body to the Rhode Island DOH, established in accordance with Chapter 17 of Title 25 of the Rhode Island General Laws. The full Council is comprised of twenty-two (22) members appointed pursuant to G.L. 1956 § 23-17-13. A Project Review Committee from the Health Services Council reviewed the entire record and voted 5-0 to recommend to the full Health Services Council the approval of the proposal as both needed and affordable as required by the Health Care Certificate of Need Act of Rhode Island, G.L. 1956 §23-15-1 et seq.[1]
The Rules and Regulations for the Department of Health define "public need" as
 "a substantial or obvious community need for the specific new health care equipment or new institutional health service proposed and the scope thereof, in light of the attendant circumstances and in the context of the considerations outlined in sections 4.3(d) and 9.11 herein."
"Affordability" is defined as "the relative ability of the people of the state to pay for or incur the cost of a proposal," and the Regulations go on to suggest the factors that may be considered to determine affordability, e.g., the state's economy, statements of affected parties, "economic, financial, and/or budgetary constraints" of affected parties including cost impact statements, and other factors deemed relevant by the DOH. R23-15-CON, § 3.26
On November 26, 2002, the full Health Services Council reviewed the CON application and the recommendations of the Project Review Committee at another public hearing. All parties again had the opportunity to comment. After considering the entire record, the Council unanimously voted to recommend approval of Miriam's request for a CON to upgrade its surgical services unit, subject to certain enumerated conditions. Patricia Nolan, M.D., MPH, Director of Health for the State of Rhode Island, accepted the recommendations of the Council and issued the Department's approval on November 27, 2002.
Summit requested reconsideration of the Department's decision on December 26, 2002, in accordance with DOH regulation 14-000-006 Section 16. Summit also requested and was granted "additional time to provide more specific details for the basis of their motion." Pursuant to the motion, DOH allowed Summit until January 13 to collect more details for the Council's reconsideration. Summit did not, however, provide further information. On January 14, Miriam objected to the Motion for Reconsideration, and a decision to deny the Motion for Reconsideration was issued on January 21, 2003. The denial stated, in part: "SNA (Summit) and Dulgarian have failed to demonstrate a basis which the state agency determines constitutes good cause for reconsideration. The state agency finds that SNA and Dulgarian have failed to demonstrate any grounds upon which reconsideration ought to be granted."
Summit filed a timely request for administrative review pursuant to DOH R23-15-CON, § 17, and G.L. 1956 § 23-15-6 and G.L. 1956 § 42-35-15 (The Administrative Procedures Act). On March 12, 2003, the Department of Administration conducted a preliminary hearing and compiled the record of the case. The Administrator of Adjudication issued a detailed written decision affirming the DOH decision on September 2, 2003. On September 30, 2003, Summit requested review of the administrative decision by this Court, in accordance with G.L. 1956 § 42-35-15 and DOH R23-15-CON § 18.
 STANDARD OF REVIEW
The standard for judicial review of contested cases under the Administrative Procedures Act is delineated in G.L. 1956 §42-35-15(g), which states:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
The review by the Superior Court is confined to the record of the administrative proceeding. Environmental Scientific Corp. v.Durfee, 621 A.2d 200, 204 (R.I. 1993). Moreover, "the Superior Court may not, on questions of fact, substitute its judgment for that of the agency whose action is under review." (BarringtonSchool Committee v. Rhode Island State Labor Relations Board,608 A.2d 1126, 1138 (R.I. 1992)). The Court's role is limited to examining the record to determine if there is any competent evidence to support the agency's decision. "If there is sufficient competent evidence in the record, the court must uphold the agency's decision." (Johnston Ambulatory SurgicalAssociates v. Nolan, 755 A.2d 799, 805 (R.I. 2000)) (citingBarrington School Committee, 608 A.2d at 1138).
 ADMINISTRATIVE PROCEDURE
Before beginning discussion of Appellant's arguments, an initial review of the Department of Health procedure, which was very clearly explained in Johnston Ambulatory Services, is instructive. Id. at 806-807. Johnston explains:
 "Section 10.3(b) of the CON regulations does provide that a hearing officer shall conduct the hearings, but this hearing officer acts only in a ministerial capacity and is not involved in the council's determination of its recommendation or the director's review of the council's recommendation." Id. at note 2 A verbatim record of the proceedings before the hearing officer, along with all of the exhibits, is compiled, and it is this record which is forwarded to the Health Services Council for their review. The Health Services Council is essentially reviewing a "cold record," with no findings of credibility entered by the hearing officer. Id. It is the task of the Health Services Council to sift through all of the materials and make detailed written findings and recommendations based on the record and the requirements of the CON regulations.
The Council's purpose is to act as an advisory body to the DOH, in accordance with G.L. 1956 § 23-15-7.[2] The factors that the Council are to consider include, but are not limited to, the public need for such a service, the continuity of patient care, the cost of the project, the source of the funds to be used, the condition of the state's economy, and the impact of the project on "operating expenses, per diem rates, health care insurance premiums and public expenditures." (§ 9.11(t)(i)). Once the Council reaches its decision, it is forwarded, with written commentary and the complete record, to the Department of Health.
The DOH must review the entire record in light of the impact on the public's accessibility of health services that the proposed project will make as outlined in CON regulation § 13.6. The DOH must make written findings to support its decision, and may "approve or disapprove, in whole or in part, any application as submitted." CON regulation 13.9. Deference to the Council's findings of fact is not required, as they are not basing their recommendation on findings of witness credibility. SeeJohnston Ambulatory Services, 755 A.2d at 806. If the DOH makes a final decision that is in conflict with the Health Services Council recommendation, then written reasons for that variance must be submitted with the decision. CON regulation § 13.8. The final decision of the DOH is sent to the parties, including conditions to the approval of an application, if any. Acceptance of the DOH's decision by the applicant implies acceptance of the stated conditions, as well .
At that point, any person affected by the agency's decision may request reconsideration of the application within 30 days. In order to request reconsideration, the person must claim that there is "significant relevant information" that the agency did not consider; that there have been significant changes in the facts relied on by the agency; that the agency did not follow its procedures; or that the agency has determined constitutes "good cause." CON reg. § 16.1(a). If the DOH decides reconsideration is warranted, then notice is again sent to all affected parties, and additional public hearings are held before an adjudicatory hearing officer of the DOH. The regulations then provide procedures for both an administrative appeal to the DOH and, if necessary, subsequent judicial review.
 SUMMIT'S APPEAL
As noted, the decision of the DOH was upheld upon administrative review, and Summit requests this Court to review the record on the grounds that the Health Services Council failed to follow the law and regulations applicable to CON proceedings, and that there is no basis in law or fact for issuing a CON to Miriam. Specifically, appellant raises six issues for the court's review, which will be addressed in seriatim.
A. NEW INSTITUTIONAL HEALTH SERVICES
Initially, Summit argues that the Miriam will neither be providing any new services in their proposed new building, nor have they cited a need for new health services to justify construction of a new building. Therefore, appellants argue, the DOH is without statutory authority to grant a CON. Summit premises its argument on G.L. 1956 § 23-15-3, which establishes the purpose of the Health Care Certificate of Need Act of Rhode Island, and states:
 "The purpose of this chapter is to provide for the development, establishment, and enforcement of standards for the authorization and allocation of new institutional health services and new health care equipment." (Emphasis added.)
DOH responds that appellants have misinterpreted the meaning of the Health Care Certificate of Need Act as codified in G.L. 1956 § 23-15-3. DOH further contends that all "renovations, upgrades, replacements and new technology" are established and appropriate reasons for requesting a CON. DOH reply at 9. The DOH observes that "[e]ssentially, the Appellants appear to claim that the Hospital does not have a right to request approval for renovations, upgrades, replacements, and new technology involving existing surgery services." Id. Moreover, the DOH claims, the fact that the proposed renovations were projected to cost in excess of $2,000,000 was enough to trigger the necessity of a Certificate of Need, pursuant to G.L. 1956 § 23-15-2(10)(ii).
The term, "new institutional health services," is defined, in pertinent part, as meaning and including:
 "(i) Construction, development, or other establishment of a new health care facility.
 (ii) Any expenditure except acquisitions of an existing health care facility which will not result in a change in the services or bed capacity of the health care facility by or on behalf of an existing health care facility in excess of two million dollars ($2,000,000) which is a capital expenditure including expenditures for predevelopment activities. . . . .
 (iv) Any capital expenditure which results in the addition of a health service or which changes the bed capacity of a health care facility with respect to which the expenditure is made. . . .
 (v) Any health service proposed to be offered to patients or the public by a health care facility which was not offered on a regular basis in or through the facility within the twelve (12) month period prior to the time the service would be offered, and which increases operating expenses by more than seven hundred and fifty thousand dollars ($750,000). . . .
 (vi) Any new or expanded tertiary or specialty care service, regardless of capital expense or operating expense, as defined by and listed in regulation, the list not to exceed a total of twelve (12) categories of services at any one time." G.L. 1956 § 23-15-2(10)
 "New health care equipment" means health services provided in or through health care facilities and includes the entities in or through which the services are provided." G.L. 1956 § 23-15-2(9)
It is well settled in Rhode Island law that substantial deference will be paid to an agency's interpretation of its regulations and enabling statutes. "[W]hile not controlling, the interpretation given a statute by the administering agency is entitled to great weight." State v. Cluley, 808 A.2d 1098, 1103 (R.I. 2002) (citing Berkshire Cable Vision of Rhode Island, Inc.v. Burke, 488 A.2d 676, 679 (R.I. 1985) "[A]n administrative agency will be accorded great deference in interpreting a statute whose administration and enforcement have been entrusted to the agency." In re Lallo, 768 A.2d 921, 926, (R.I. 2001) "Where the provisions of a statute are unclear or subject to more than one reasonable interpretation, the construction given by the agency charged with its enforcement is entitled to weight and deference as long as that construction is not clearly erroneous or unauthorized." Whitehouse v. Davis, 774 A.2d 816, 818-819 (R.I. 2001) (quoting Gallison v. Bristol School Committee,493 A.2d 164, 166 (R.I. 1985)).
DOH has determined that Miriam's CON application is subject to DOH review pursuant to G.L. 1956 § 23-15-1 et seq, particularly §23-15-2, and R23-15-CON. That determination is not clearly erroneous or unauthorized, and thus will be given great weight by this Court.
Summit's argument that there will be no new services, and therefore there should be no review by the DOH would serve to remove Miriam's proposal from the CON process entirely and enable Miriam to proceed unhindered. That is surely not what Summit intended in making this argument. Therefore, as a threshold issue, this Court finds that the DOH review of Miriam's CON application was appropriate, and Summit's initial argument must fail. Moreover, the Court agrees with the DOH contention that the substantial nature of this renovation would constitute "new" within the meaning of the statute.
B. DEMONSTRATION OF NEED
Summit's next argument is that Miriam failed to demonstrate need within the terms of G.L. 1956 § 23-15-4(b). Summit Brief at 6. Summit has cited the adjudicatory hearing officer's finding that "[t]he overwhelming evidence presented to the Project Review Committee and the Health Services Council show that there will not be additional health services provided" to support their contention.[3] Summit Brief at 6. Summit further reasons that "no additional health care services will be provided in Rhode Island, that no new efficiencies will be provided, no unmet health need will be served." Id.
Miriam references Dr. Hittner's presentation at the hearing, which included pictures of the outdated operating rooms and the crowded conditions generated by the increased size and number of pieces of equipment used in today's more complicated procedures. Specifically, Miriam asserts that the size of the surgical suites at a hospital with the patient volume of Miriam should be approximately 3,100 gross square feet ("gsf") per OR. Currently, its operating rooms are approximately one half that space, or 1,524 gsf per OR. Miriam Brief at 9. Miriam also cites to the lack of privacy resulting from a need to speak to patients and their families in the hallways of the surgical area, as there is inadequate space for preparation and holding of patients awaiting surgery. Miriam is additionally concerned with the increased danger of injury to their employees due to the cramped spaces, and the increased danger of infection and increased OR turnover time due to the cracked cement in the floors of the operating area and the difficulty of keeping the area sterile. Finally, Miriam notes that due to all of the factors above, as well as inadequate temperature control and ventilation, Miriam will need extensive improvements in order to comply with the most recent JCAHO, OSHA and AIA guidelines for construction of medical facilities. Id.
DOH maintains that even though there was not an increase in rooms requested, in the Department's judgment and findings, the need for upgrades and renovations of existing rooms clearly exists. DOH further notes that the site visit made by the Health Services Council served to substantiate Dr. Hittner's testimony and the Miriam's CON application.
Rhode Island General Law 1956 § 23-15-4(b) states:
 "No approval shall be made without an adequate demonstration of need by the applicant at the time and place and under the circumstances proposed, nor shall the approval be made without a determination that a proposal for which need has been demonstrated is also affordable by the people of the state."
Substantial evidence was presented regarding the need of Miriam to upgrade its facility within the parameters requested by their CON application. The Health Services Council considered the factors Miriam claimed supported the need for such a project, and completed a site visit on September 24, 2002. The HSC noted that "it is documented in the state that over the next ten years there will be an increase of demand for surgical services that can only be met by increased access and availability of ORs". Decision at 6. A member of the committee noted after taking the site visit that "there is a need for the renovation of the Ors in the facility" Id. This Court will not disturb the findings of an agency when they are supported by substantial evidence on the whole record. As the record before the DOH clearly reflected the need for Miriam's proposed upgrade, its finding will not be disturbed.
C. AFFORDABILITY
The DOH Rules and Regulations define the considerations necessary to determine affordability of a proposal. The Rules instruct that:
 "Affordability" means the relative ability of the people of the state to pay for or incur the cost of a proposal, given:
 a) consideration of the condition of the state's economy;
 b) consideration of the statements of authorities and/or parties affected by such proposals;
 c) economic, financial, and/or budgetary constraints of parties affected by such proposals, including cost impact statements submitted by the State Medicaid Agency or State Budget Officer;
 d) other factors deemed relevant by the Health Services Council or the Director." R23-15-CON § 3.26
Summit contends that the DOH made no findings of affordability in accordance with R23-15-CON § 3.26. Summit further claims that in the findings of the DOH, there was no "discussion by the Health Services Council of the health care accessibility crisis facing Rhode Island" during the CON proceedings, there was no evidence regarding the impact of Miriam's proposed $2.9 million increase in revenues on low income persons and minorities, and there was a lack of state financial data relating to affordability in compliance with R-23-15-CON § 3.26. Summit Brief at 9.
Conversely, the DOH asserts that Summit is confusing the CON process with the rate-setting process, and thus all of its arguments pertaining to this issue are "fatally flawed." DOH Brief at 13, 22. The rate setting process, DOH argues, sets reimbursement rates for medical care, while the Certificate of Need process focuses on capital expenditures and operating costs. The $2.9 million figure represents the projected increase in revenues resulting from a more efficient utilization of the area. However, DOH claims that the HSC did, in fact, consider the factors required under the definition of affordability. The DOH cites the fact that the HSC has representation on the council from Blue Cross, the State Budget Office, and the Department of Human Services (Medicaid), and that none of these authorities provided negative comment regarding the affordability of the proposal at issue. DOH claims that the "lack of authoritative negative commentary implies that the project passed muster on the issue of affordability. . . ." DOH Brief at 21.
Miriam maintains that the project is affordable thanks to the fact that Miriam is a "fiscally sound and prudent health care facility." Further, Miriam provides millions of dollars in uncompensated care annually. Finally, the fact that Miriam proposes to fund the entire project through equity is a favorable factor with respect to the CON approval process.
The DOH has adopted detailed and extensive regulations to determine that the statutory requirements of need and affordability are met. The record demonstrates that the HSC report clearly states its findings regarding the affordability of the project, including the following: an analysis of costs associated with the project, a finding that the impact of the project on the reimbursement system is reasonable, and a consideration of the state's budget and the economic, financial and budgetary effect on all parties to the proposal. The HSC used the guidelines presented in R23-15-CON § 9.11, and considered each matter presented in light of Miriam's CON application. The HSC findings pertaining to affordability are supported by the reliable probative and substantial evidence on the whole record, and are neither arbitrary nor capricious. Therefore, the determination of the DOH regarding the affordability of Miriam's CON proposal will not be disturbed.
D. COST IMPACT ANALYSIS
Summit claims that notice was not provided to Blue Cross or the State Budget Office of the requirement to provide cost impact analyses in accordance with G.L. 1956 § 23-15-2(1) and G.L. 1956 § 23-15-6(a). Summit Brief at 11. Additionally, Summit notes that the State Budget Office and Blue Cross Blue Shield did not then provide the cost impact analyses as required by G.L. 1956 §23-15-6(e)(1), and thus DOH did not have the statutory authority to act on Miriam's CON application.
With respect to the above, Miriam only responds that there is a representative of both agencies on the Health Services Council, pursuant to G.L. 1956 § 23-17-13, and thus Miriam implies that sufficient notice was given to those bodies. Miriam does not address the lack of the submission of the required cost impact analyses by these authorities. They note, though, that Summit has not raised this matter prior to this appeal.
DOH also does not respond to the issue of notice to those bodies, but refers to the representation on the Council of hospital service corporations (Blue Cross), Medicaid, and the state budget office. None of these representatives provided negative commentary regarding the Miriam's CON application, and the DOH asserts that the lack of negative commentary by these parties must reflect favorably on the affordability issues.
Rhode Island General Laws 1956 § 23-15-6(e) requires that
 "[i]n the case or review of proposals by health care facilities who by contractual agreement, chapter 19 of title 27, or other statute are required to adhere to an annual schedule of budget or reimbursement determination to which the state is a party, the state budget office and hospital service corporations organized under chapter 19 of title 27 shall forward to the health services council within forty-five (45) days of the initiation of the review of the proposals by the health services council under § 23-15-4(f)(1): (1) A cost impact analysis of each proposal which analysis shall include, but not be limited to, consideration of increases in operating expenses, per diem rates, health care insurance premiums, and public expenditures; and (2) Comment on acceptable interest rates and minimum equity contributions and/or maximum debt to be incurred in financing needed proposals."
While Summit does not present grounds that establish its standing to protest notice given to those agencies by Miriam and/or DOH, notice of public meeting on Miriam's CON was published in The Providence Journal in June 2002, and is sufficient as to all "affected parties" pursuant to R23-15-CON § 9.5(b).[4] As to the presentation of written cost impact analyses, there is evidence in the record that the DOH requested such analyses from both the State Budget Office and Blue Cross Blue Shield, by letters dated July 10, 2002. The agencies neither replied nor complied with DOH's request, although all members of the HSC were given opportunity to comment on the cost impact of the proposal at any number of hearings. Statutory reference to this requirement includes G.L. 1956 § 23-15-6 (e) which states in part
 "In the case or review of proposals by health care facilities who by contractual agreement, chapter 19 of Title 27, or other statute are required to adhere to an annual schedule of budget or reimbursement determination to which the state is a party, the state budget office and hospital service corporations organized under chapter 19 of title 27 shall forward to the health services council within forty-five days of the initiation of the review of the proposals by the health services council under § 23-15-4(f)(1):
 (1) A cost impact analysis of each proposal which analysis shall include, but not be limited to, consideration of increases in operating expenses, per diem rates, health care insurance premiums, and public expenditures;"
Whether an applicant for administrative review, who has completed all of the requirements satisfactorily, should be penalized for a lack of compliance by an entity that is not a party to the action, but whose input is required by statute, raises an interesting question of law. The Court does not need to reach that issue today, however, because a review of the entire record indicates that Summit made one reference to this requirement, specifically disclaiming its necessity, prior to this appeal. That statement was made at the hearing on September 12, 2002. At that time, counsel for Summit stated:
 "If you're just allowing factual witnesses, unless there's a disputed fact, which I wouldn't think so in a case like this, we know how many beds they have, how many patients they have, what the Medicare/Medicaid impact is, the Blue Cross/Blue Shield impact is. They've done the multiplication, and I can multiply as well as they can, and so can you. I don't think you need an expert to multiply. Third graders can do that." Record at p. 10, l. 18 et seq.
Summit has not mentioned the cost impact analysis again in the entire proceeding, until this appeal. This Court is mindful that:
 "[t]he importance of the "raise-or-waive" rule is not to be undervalued. Not only does the rule serve judicial economy by encouraging resolution of issues at the trial level, it also promotes fairer and more efficient trial proceedings by providing opposing counsel with an opportunity to respond appropriately to claims raised." State v. Burke, 522 A.2d 725, 731 (R.I. 1987)
Therefore, pursuant to our well settled "raise or waive" rule, and Summit's decision not to raise the issue until this time, the matter is deemed waived.
E. STATE HEALTH PLAN
Summit's next contention is that the DOH neglected to include findings regarding Miriam's compliance with the state health plan, pursuant to G.L. § 23-15-4(e)(1), which states: "The health services council shall consider, but shall not be limited to, the following in conducting reviews and determining need: (1) The relationship of the proposal to state health plans that may be formulated by the state agency." Summit further contends that the formulation of a health care plan is a "prerequisite" to the DOH CON process. Summit bases this premise on G.L. 23-1-1.1 which states:
 "It is found and determined that health planning is essential to promote appropriate access to high quality health services at a reasonable cost and is a precondition to effective public health practice by the department of health; and that health planning is a prerequisite to the effective discharge of the department of health's certificate of need responsibilities."
Moreover, Summit alleges that DOH's failure to promulgate a state health plan is in "complete abrogation of its statutory responsibility" as conferred in G.L. 1956 § 23-16-2 and G.L. 1956 § 23-1-1.2.[5]
The DOH responds by tracing the history of the legislation referring to a state health plan and notes that since the enactment in 1978, and through the various language changes, the references to formation of a state health plan have always been permissive, rather than mandatory. Moreover, with respect to CON applications and a state health plan, the statutory language requires consideration only if a state health plan is in existence at the time. There is no state health plan active at the present time, and the most recent plan expired in 1996. Thus the consideration of compliance with a state health plan is not applicable to the Miriam CON application.
When a statute pertaining to an agency is unclear or ambiguous, the agency's interpretation will be given deference if not clearly erroneous. Conversely, where the plain language of a statute is unambiguous, "the task of interpretation is at an end." First Bank Trust Co. v. City of Providence,827 A.2d 606, 614 (R.I. 2003) (quoting State v. Bryant, 670 A.2d 776, 779 (R.I. 1996). Thus "there is no room for statutory construction and we must apply the statute as written." In reDenisewich, 643 A.2d 1194, 1197 (R.I. 1994). The legislature clearly conveyed a permissive intent in the grant of power to the DOH to create and institute a statewide health plan. General Law 1956 § 23-15-4(e)(1), on the other hand, clearly mandates that if there is such a plan in effect, the DOH must consider it in light of CON applications. Since there is no current statewide health plan, the DOH was free to make the determination that this section did not apply to the Miriam CON application.
F. INSTITUTIONAL MASTER PLAN
Summit's final contention is that Miriam's planned demolition of the old buildings and construction of a single larger facility is in direct conflict with the Institutional Master Plan that Miriam filed with the City of Providence in accordance with City of Providence Zoning Ordinance § 503.4. That regulation provides in part:
 "The master plan shall be a statement, in text, maps, illustrations, or other media of communication that is designed to provide as basis for rational decision making regarding the long term physical development of the institution. The plan shall include an implementation element which defines and schedules for a period of five (5) years or more, the specific public actions to be undertaken in order to achieve the goals and objectives of the plan."
Summit reasons that since there was no mention of this proposal in the most recently filed Institutional Master Plan, that Miriam may not proceed.
Miriam responds that although zoning issues were discussed in great detail at the hearing of September 12, 2002, and DOH requested and received information regarding the Institutional Master Plan in their written inquiries, the question of compliance with such a plan is beyond the purview of the DOH. Rather, this matter is within the jurisdiction of the City of Providence Zoning Board, and thus not an appropriate matter for this appeal.
DOH agrees with Miriam's assessment on proper jurisdiction for such inquiries. Moreover, DOH cites that Summit has not filed any complaints regarding this project with the Zoning Board, and that counsel for Summit admitted at the September 16, 2002 hearing that "the vertical nature of the proposal is within the limitations of institutional zoning." Transcript at 25. Finally, DOH cites a letter filed by Miriam with the DOH in support of their CON application. Miriam sought out and obtained an opinion letter from their law firm describing pertinent zoning issues in detail, and advising that there were no zoning impediments to their building proposal.
Assuming without deciding that Summit's argument requiring Miriam's conformity with their Institutional Master Plan prior to acceptance of their CON application is appropriately raised, this Court finds the argument without merit. DOH regulations require that a receipt from the applicable zoning authority, evidencing the submission of an application for zoning approval, should be included with the CON application, where zoning approval is required by the municipality. 23-15-CON § 14(i). Moreover, all approvals of CON applications are subject to the condition "that failure to obtain needed zoning approval(s) on a timely basis consistent with the requirements of section 15.0 shall be grounds for the withdrawal of any certificate of need granted subject to any zoning approvals. R23-15-CON(9)(l). Thus, the plain language of the regulations indicates that the proper sequence in the project application process requires DOH approval prior to the availability of final zoning approval.
Additionally, during the hearing process, the HSC provided to Miriam written questions for their reply which included the following:
 "2. Please describe the requirements that The Miriam Hospital has with respect to filing its "Five Year Master Plan" with the City of Providence. Please provide the status of The Miriam Hospital with respect to its filing obligations. Please provide written verification from the City of Providence that The Miriam Hospital is presently in full compliance with all filing requirements."
Miriam's response, in part, stated:
 "TMH [Miriam] filed the Institutional Master Plan with the City of Providence in April 1999. The plan was approved as submitted and the hospital is in compliance with its filing obligations. The hospital is not required to file another plan until 2004, and plans to amend the 1999 plan after approval of the pending CoN by the DoH, assuming the DoH grant's (sic) approval. The hospital has been actively discussing with both the City Planning and Building Departments the construction included in the pending CoN, and must obtain a variance for the street setback requirement along 7th street."
Through this information, the DOH had before it probative evidence of Miriam's compliance with the CON regulations. In addition, the DOH has adequately considered the limited zoning issues within the statutory authority of the agency.
Finally, it must be noted that Summit included the City of Providence as a defendant in this action. The City of Providence was served and failed to respond. However, Summit's only mention of a claim against the City is in their initial complaint, in which it requests injunctive relief to "restrain the City of Providence from issuing any construction or building permits to the Miriam Hospital until Miriam Hospital conforms to the requirement of institutional zoning of the City of Providence." Due to this Court's ruling on the matter, however, Summit's request for injunctive relief is moot.
 CONCLUSION
After review of the entire record, this Court finds sufficient evidence to support the findings of the Health Services Council, as adopted by the Director of the Department of Health regarding Miriam Hospital's Certificate of Need application. Moreover, the DOH decision is supported by the reliable, probative and substantial evidence on the record, and is not affected by error of law or abuse of discretion. Substantial rights of the appellants have not been prejudiced. Therefore, the decision of the DOH to grant the Miriam's CON application is affirmed.
[1] G.L. 1956 § 23-15-4(b) states: "No approval shall be made without an adequate demonstration of need by the applicant at the time and place and under the circumstances proposed, nor shall the approval be made without a determination that a proposal for which need has been demonstrated is also affordable by the people of the state."
[2] The Council is empowered to delegate the initial step in its review process to a Project Review Committee. That Committee forwards its recommendations to the full Health Services Council.
[3] In making their argument, Summit significantly neglects to include the remainder of the sentence used for support, wherein the hearing officer states ". . . but that this is in fact the renovation of a woefully inadequate amount of space required to perform legally and reasonably the work the hospital is required to do." Adjudicatory review decision at 7.
[4] "In addition, a notice of the beginning of the review cycle, including the information required above, shall be published in a newspaper having aggregate general circulation throughout the state. This method shall serve as appropriate notice to members of the general public to be served by the applicant or otherwise affected by the subject matter of the application." R23-15-CON § 9.5(b).
[5] G.L. 1956 § 23-16-2: "Federal funds for survey andplanning. — Except where a single state agency is otherwise designated or established in accordance with any other state law, the department of health is designated to be the sole agency of the state to establish and administer any statewide plan for the construction, equipment, maintenance, or operation of any facility for the provision of car, treatment, diagnosis, rehabilitation, training, or related services, which plan is now or may be required as a condition to the eligibility for benefits under any federal act. . . ."
G.L. 1956 § 23-1-1.2: "Health planning process. — The department of health is authorized to conduct health planning studies and to develop health plan documents to assist the department of health, the director of health, and the health services council in the conduct of their public health responsibilities. The director of health, with the approval of the governor, may appoint various committees and task forces as appropriate to assist and advise the department of health in the conduct of its health planning responsibilities, provided that the director of health may appoint ad hoc short-term committees or task forces to advise and assist the director on technical issues.