358 A.2d 38.

FIRST REPUBLIC CORPORATION OF AMERICA
*vs.* JOHN H. NORBERG *et al.*

MAY 26, 1976.

PRESENT: Paolino, Acting C. J., Joslin and Kelleher, JJ.

PAOLINO, J. This is a petition for certiorari to review a judgment of the Superior Court which affirmed the decision of the Tax Administrator.

The petitioner herein, the First Republic Corporation of America (First Republic) duly filed a Rhode Island Business Corporation tax return for the fiscal year ending June 30, 1970, showing $4,935 tax due. The tax division determined that mortgage indebtedness, notes payable and accounts payable totaling an additional $20,898,175 should have been included in the "corporate excess"[1] to which the tax is applied and sent First Republic a notice indicating $22,284 additional tax due. First Republic was granted a hearing before the Tax Administrator pursuant to G. L. 1956 (1970 Reenactment) §44-11-6. The petitioner challenged two aspects of the adjustment: (1) the inclusion of its mortgage indebtedness, notes payable and accounts payable in the corporate excess, and (2) the manner in which the tax division apportioned its in-state and out-of-state operations. The Tax Administrator ruled that the adjustment was correct in both respects. The petitioner then paid the disputed tax and appealed the decision to the Superior Court as provided in §44-11-35. The Superior Court upheld the decision of the Tax Administrator and we granted certiorari to review.

---

[1]The tax on "corporate excess" has since been repealed and replaced by a tax on the "net worth" of the corporation. General Laws 1956 (1970 Reenactment) §§44-11-2(2), 44-11-16, as amended by P. L. 1974, ch. 200, art. II.

# I

The petitioner's first argument is that §44-11-16(1) does not authorize the tax administrator to include mortgage indebtedness, short term promissory notes and accounts payable within the taxable corporate excess. That section provides:

"To the value of the capital stock there shall be added as part of the measure of value of the property of the corporation: (a) the total value of its outstanding bonded indebtedness, (b) the total value of its outstanding indebtedness evidenced by debentures, (c) the total value of its other indebtedness or liabilities which constitute dividends declared, salaries and bonuses unpaid, reserves for taxes, such indebtedness as is not bona fide or is a cover for a division of its profits, and such indebtedness, by whatever term described, as in the opinion of the tax administrator should be included in determining the full ratable valuation of such corporation."

The tax administrator claims that he may include such debts by virtue of the catch-all phrase at the end of clause (c). The petitioner contends that the catch-all phrase may not be construed to permit inclusion of these debts without violating accepted principles of statutory construction.

First, petitioner calls our attention to the legislative history of the statute. From 1930 to 1947 the relevant statutory provision read as follows:

"(1) To the value of the total number of its shares outstanding determined as aforesaid there shall be added, as part of the measure of value of the property of such corporation: (a) the total value of its outstanding bonded indebtedness, if any; (b) the total value of its outstanding indebtedness evidenced by debentures, if any; (c) *the total value of its other indebtedness, if any, incurred for the acquisition of real estate or of tangible personal property, and such other of its indebtedness as such corporation shall return;*

> (d) the total value of its indebtedness, if any, which constitutes dividends declared, salaries or bonuses unpaid, or reserves for taxes; (e) such other of its indebtedness, if any, as is not bona fide or is a cover for a division of its profits; (f) and such other of its indebtedness, by whatever term described, as in the opinion of said board should be included in arriving at a full ratable valuation of such corporation." (Emphasis added.) Public Laws 1930, ch. 1593, §2 (amended 1947).

This language was replaced by the provision in question here, which substantially differs only in that it omits the language contained in clause (c) of the previous version. The petitioner argues that this omission reveals an intent to prohibit the inclusion of mortgage indebtedness. We cannot agree.

Legislative history is properly used as an aid to construction only when the statute is itself ambiguous. When the language of a statute expresses a clear and sensible meaning, this court will not look beyond it. *Podborski* v. *Wm. H. Haskell Mfg. Co.,* 109 R. I. 1, 279 A.2d 914 (1971); *Reardon* v. *Hall,* 104 R. I. 591, 247 A.2d 900 (1968). We believe the catch-all phrase in clause (c) is quite clear: "* * * such indebtedness, *by whatever term described,* as in the opinion of the tax administrator should be included * * *." (Emphasis added.) Since petitioner does not contend that such a reading would defeat the policy of the statute or yield an absurd result, we will follow the plain meaning of this language.

We also note that the language of the previous statute refers to purchase money indebtedness rather than mortgage indebtedness. The petitioner has not alleged that these are purchase money mortgages.

Second, the taxpayer contends that the language of subsection (c) preceding the catch-all phrase enumerates various species of debt "* * * having a common characteristic relating to its lack of legitimate business purpose,

benefits to shareholders, and diminution of liability for corporate excess tax." Under the doctrine of *ejusdem generis*, where a series of specific terms in a statute is followed by a general term, such as the catch-all phrase in question here, the general term will be construed to embrace only additional examples of a similar nature as those enumerated. *Powers ex rel. Doyon* v. *Charron*, 86 R. I. 411, 135 A.2d 829 (1957); 2A Sutherland, *Statutory Construction*, §§47.17-.22 (4th ed. 1973). The taxpayer argues that mortgage indebtedness, notes payable, and accounts payable do not share the common characteristics noted above; therefore, they may not be included under the catch-all phrase. We find this argument unpersuasive.

The doctrine of *ejusdem generis* does not apply where the specific terms preceding the general terms share no common characteristic. Sutherland, *supra*, §47.20. We are unable to perceive the common characteristics alleged by the petitioner in the various kinds of indebtedness listed in clause (c). For purposes of analysis, the language of clause (c) which precedes the catch-all phrase may be divided into two parts. The first part is a list of specific types of indebtedness: "dividends declared, salaries and bonuses unpaid, reserves for taxes." The only shared characteristic is that all are generally current liabilities. The second part refers to "such indebtedness as is not bona fide or is a cover for a division of its profits." There is no logical connection between these two parts. The types of current liabilities listed in part one are not necessarily bad faith debts, etc., or even more likely to be so than other common forms. There is also a great difference in the manner in which the two parts are phrased. Part one consists of very specific descriptions, while part two describes a very broad category of indebtedness. In short, clause (c) appears to be a collection of disparate parts rather than a coherent whole.

## II

The petitioner next claims that the catch-all phrase of clause (c) constitutes an unlawful delegation of legislative power to the Tax Administrator. We have said many times that a delegation of power to an administrative agency will not be deemed unreasonable and therefore unlawful unless it is not accompanied by sufficient standards or safeguards. *E.g., Housing Authority* v. *Fetzik,* 110 R. I. 26, 289 A.2d 658 (1972); *City of Warwick* v. *Warwick Regular Firemen's Ass'n,* 106 R. I. 109, 256 A.2d 206 (1969); *cf. Jennings* v. *Exeter-West Greenwich Regional School Dist. Comm.,* 116 R.I. 90, 352 A.2d 634 (1976). We believe the catch-all provision of §44-11-16 (1)(c) is wholly lacking in such standards or safeguards.

The Tax Administrator contends that an adequate standard may be found in the language at the beginning of §44-11-16(1): "* * * as part of the measure of value of the property of the corporation * * *" and the words at the end of clause (c): "as * * * should be included in determining the full ratable valuation of such corporation." Read together, he argues, the two phrases permit him to add to the corporate excess only those forms of debt which reflect "property" held by the corporation. While this language appears to place a discernible limitation upon the discretion of the Tax Administrator, the limitation is wholly superficial because it is impossible to discover what the word "property" refers to in this statute. We are unable to discover any coherent definition of property that does not openly conflict with some express provision of the statute.

Under the terms of this statute, the tax base is derived from the balance sheet of the corporation. Thus, it must be construed with an eye to the principles of accounting. An axiom of accounting is that property is classified as an asset and is listed on the left-hand side of the balance

sheet. Here, however, the tax on "property" is calculated from the liabilities of the corporation. The liabilities account is a measure of the value of property held by the corporation only in the sense that total liabilities must always equal total assets. One may not determine the value of any particular asset or class of assets from any entry in the liabilities account, since differing kinds of liabilities do not necessarily represent particular kinds of assets.

The Tax Administrator contends that "property" in this statute means "anything of value." This approach has considerable appeal. First, the statute speaks of *the* property of the corporation, not any particular kind of property. It would not be unreasonable to read *the* property to mean *all the* property in this context. Second, construing "property" to mean total assets is one way of bridging the conceptual gap in a statute whose stated purpose is to tax "property" in some sense, but which in fact taxes liabilities. Restated in accounting terms, "anything of value" means total assets. Since total assets always equal total liabilities, this measure of property could be determined from the liabilities side of the balance sheet.

There is strong evidence, however, that the Legislature did not intend to tax total assets. Since total assets always equal total liabilities, if the Legislature wanted to tax total assets in this fashion it would have instructed the Tax Administrator to *always* include *all* liabilities in the corporate excess. In fact, the statute contains no such blanket rule. Not only does the statute leave the inclusion of many common forms of indebtedness to the discretion of the Tax Administrator, this discretion is described as a discretion to *include*, which seems to contemplate that he will routinely fail to include some debts. Furthermore, while Legislatures often choose indirect ways of doing things, it is quite unlikely that the Legislature

would employ such a complex formula as §44-11-16(1) when they might achieve the same result by simply defining the tax base as total assets (or total liabilities).

There are other definitions of "property" that a tax of this type might be aimed at — net assets or tangible assets, for instance. However, an examination of the terms of the statute indicates clearly that the Legislature did not mean to incorporate any of these concepts either. Net assets consists of total assets minus all indebtedness. Net assets also equals the sum of the capital account of the corporation. This statute is obviously not aimed at net assets, because it taxes certain debts as well as the capital account. Nor can this statute be aimed at tangible (or intangible) property, since the tax base is determined from the liabilities side of the balance sheet. As noted above, to determine the value of a particular kind of asset, one must always look at the asset side of the balance sheet, because differing types of indebtedness do not represent particular kinds of assets.

There is also no discernible pattern in the specific kinds of debt enumerated in the statute that might serve to instruct the exercise of this discretionary power. The enumerated forms of indebtedness include both current and long term, secured and unsecured, those evidenced by a writing and those not, and those incurred in good faith and those not. Nor has the Tax Administrator himself created any safeguards against abuse of this discretion. We are not aware of any regulations or interpretive guidelines setting forth how this discretion is to be exercised.

In conclusion, we are unable to find any indication whatsoever of what sort of additional indebtedness the Legislature intended to be included within the corporate excess by virtue of the catch-all phrase in clause (c). The Tax Administrator is left wholly without guidance, and a court reviewing a decision of the Tax Administrator to

include additional debts is unable to determine whether the decision is consistent with the legislative purpose. Nor is there any mechanism by which a reviewing court can insure that taxpayers similarly situated are in fact treated similarly. Because it permits the Tax Administrator to act in a wholly arbitrary fashion, the catch-all phrase must be denied effect. *Housing Authority* v. *Fetzik, supra; Moore* v. *Langton,* 92 R. I. 141, 167 A.2d 558 (1961). The Tax Administrator may include in the corporate excess only those forms of debt specifically enumerated in the statute.

## III

Lastly, the taxpayer argues that the formula the Tax Administrator used to apportion the corporate excess between in-state and out-of-state operations was not authorized by statute. The proper methods of apportionment are set out in §44-11-16(2):

> "In the case of a corporation also carrying on business outside of this state, a portion of the corporate value ascertained under clause (1) shall be apportioned to this state (a) in such proportion as the assessed or fair cash value of its real estate and tangible personal property in this state on the last day of the taxable year bears to the assessed or fair cash value of its entire real estate and tangible personal property, without any deduction on account of any mortgage or encumbrance thereon, or (b) in such proportion as its gross receipts for the year ending on the last day of such taxable year in this state bears to its total gross receipts for such year both within and without this state, and (c) in any case to which these proportions are not equitably applicable, in such proportion as in the opinion of the tax administrator is equitable."[2]

---

[2]This provision has since been amended. General Laws 1956 (1970 Reenactment) §§44-11-14, -16(d), as amended, P. L. 1974, ch. 200, art. II, §1.

Here, the Tax Administrator used neither the percentage of property formula of subsection (a) nor the percentage of gross receipts formula of subsection (b). Instead, he used a combination of both the property factor and the gross receipts factor, apparently relying on subsection (c) for authority.

> "It has been the invariable practice of the Tax Division to use the combination of both the property factor and the gross receipts factor in apportioning taxable corporate excess to Rhode Island. There is no question that the statute provides for the alternative of either the property factor or the gross receipts factor. However, it has been reviewed quite thoroughly within the Division of Taxation not only in prior administrations, but recently, and it has been determined that the most nearly equitable solution is to use both factors. It is true that the use of one or the other proportion would have a lesser tax result on virtually every taxpayer (unless the fraction is identical) but in the interest of uniformity, and do avoid inequities, the Tax Administrator applies the combination impartially."

The taxpayer argues that subsection (c) authorizes the Tax Administrator to employ a third formula only after he has determined that the particular facts of an individual case make the use of either (a) or (b) inequitable, and that he has made no such determination here. We agree.

In examining the structure of §44-11-16(2) we note that it does not delegate to the Tax Administrator the power to establish a generally applicable apportionment formula. The Legislature has performed that function itself; it has determined that as a general rule either the percentage of property test of subsection (a) or the percentage of gross receipts test of subsection (b) will be equitable. We believe subsection (c) authorizes the Tax Administrator to vary from these specified formulas only in extraordinary circumstances. The Tax Administrator

has not attempted to demonstrate that this is an extraordinary case. Rather, he states that it is his "invariable practice" to use the combination formula. This is an attempt to substitute what he believes is the best general rule for the one chosen by the Legislature, and is thus outside the scope of subsection (c).

The petition for certiorari is granted, and the cause is remanded to the Tax Administrator for further proceedings consistent with this opinion.

Mr. Chief Justice Roberts was present at oral argument but retired prior to consideration or decision of this case.

Mr. Justice Doris did not participate.

*Tobin, Decof, LeRoy & Silverstein, Charles S. Sokoloff, Richard S. Rosenstein,* for petitioner.

*Julius C. Michaelson,* Attorney General, *Perry Shatkin,* Chief Legal Officer (Taxation), for respondents.