DECISION
This matter was heard by the Court sitting without a jury in February 1997. The City of Central Falls (plaintiff) seeks to enjoin the Central Falls Detention Facility Corporation, et al. (defendants) from utilizing the detention facility for prisoners other than federal pretrial detainees. The plaintiff also seeks an order directing defendants to utilize the detention facility exclusively for federal pretrial detainees. Jurisdiction is pursuant to G.L. 1956 § 8-2-13.
Facts/Travel
On July 11, 1991, the General Assembly of the State of Rhode Island enacted the Municipal Detention Facility Corporations Act which allowed the establishment of municipal detention facility corporations. § 45-54-1 et seq. The City Council of Central Falls passed resolutions enabling Central Falls to become the only municipality to construct a detention facility pursuant to § 45-54-1. The resolutions declared the need for the Central Falls Detention Facility Corporation (Corporation) to function in Central Falls and approved a proposal that the Corporation develop "a pretrial detention facility with a designated capacity of 220 beds . . . which project is the subject of an intergovernmental agreement between the Central Falls Detention Facility Corporation and the United States Marshals Service." Although not contained in the resolution approving the detention facility's development, the City Council of Central Falls also resolved that the detention facility should have only federal custody prisoners.
The Corporation was initially unable to secure financing for the detention facility. The Rhode Island Port Authority and Economic Development Corporation (Port Authority) offered to finance the project by issuing $30,000,000 of its own revenue bonds. The Corporation agreed to accept these revenue bonds and make payments on the bonds through per diem charges collected from the housing of prisoners.
In November 1993, only 6 weeks prior to the detention facility's scheduled opening, the United States Marshals Service (Marshals) informed the Corporation that they would not be able to send 290 detainees as promised. The Corporation unsuccessfully tried to procure contracts from other sources for federal detainees. The Marshals' commitment to send 47 inmates would not bring in enough income to cover debt service payments.
In order to assure an adequate income source, the Corporation signed a contract with the State of North Carolina in December 1993 to take North Carolina state prisoners. The corporation received over 200 North Carolina prisoners. Through this contract, the Corporation was able to meet its financial obligations and serve as a source of revenue for the State of Rhode Island and the City of Central Falls. Currently, none of the prisoners from North Carolina remain in the detention facility, but approximately 20% of the facility population is from out of state. All prisoners are at the facility on a short-term basis (2 years or less).
In response, the city filed the instant action on July 18, 1994 against the Central Falls Detention Facility. On August 5, 1994, the Port Authority moved to intervene. The Port Authority's motion to intervene was denied, and the Port Authority appealed. On May 10, 1995, the Supreme Court reversed and granted the Port Authority's motion to intervene.
The trial on the instant matter took place in February 1997. Daniel J. Issa (Issa), state senator from Central Falls. Issa stated that during discussions of the purpose of the detention facility only federal detainees and convicted federal prisoners with short sentences were mentioned as possible inmates for the facility. Issa stated that during those discussions opposition was expressed against housing Rhode Island ACI prisoners, but the housing of out-of-state prisoners was never discussed. Issa stated that he objected to housing ACI inmates because of concerns about traffic.
Robert J. Canavan, City Councilman from Central Falls, testified that officials connected with the detention facility represented that only federal detainees would be housed in the facility. Lee Matthews (Matthews), Mayor of Central Falls, testified that the detention facility was designed as a 220 bed facility with only federal detainees. Matthews agreed that building permits were issued for the facility as it now stands. Patricia Salisbury (Salisbury), Chairman of the Detention Facility Board, testified for the defendants. Salisbury stated that during the hearing process it was explained that the prison population could deviate upward or downward from the 220 figure. Salisbury said that building permits were issued for a building which could accommodate 305 prisoners.
Anthony Ventetuolo (Ventetuolo), a consultant with the detention facility, also testified for the defendants. Ventetuolo stated that the objections expressed about housing state inmates were in regard to Rhode Island ACI inmates, not out-of-state inmates. Finally, Antonio Afonso (Afonso) testified as an expert witness on behalf of the defendants. Afonso testified that the bond documents from the Port Authority placed no restrictions on the type of prisoners for the detention facility. Afonso also stated that a default by the Detention Facility Corporation could have a negative effect on the State's credit rating.
The plaintiff argues that (1) the plain meaning of the enabling legislation clearly shows an intent to utilize the detention facility exclusively for federal detainees; (2) the Central Falls City Council has the authority to limit the type of detention facility operated by the Corporation; (3) the omission of any reference to state inmates within the act is strong evidence of an intent to exclude state inmates; (4) extrinsic evidence demonstrates a legislative intent to limit the facility exclusively to federal detainees; and (5) a possible default incurred by the detention facility has no bearing on the statute's intent to allow only federal detainees in the detention facility. The defendants' respond that the state legislation under § 45-5-1 et seq. is ambiguous and may be construed to allow the housing of out-of-state inmates in the detention facility. The defendants further argue that the plaintiffs reading of the statute would effect an absurd result because the Corporation would be prevented from saving itself from financial ruin. In addition, the defendants point out that the Supreme Court's order which allowed the Port Authority to intervene specifically advised that attention should be focused on the bonded indebtedness of the Corporation and the Corporation's ability to continue to operate.
Plain Meaning of the Statute
The plaintiff argues that a plain reading of the enabling statute clearly establishes that the Corporation is not authorized to house out-of-state prisoners in the detention facility. The plaintiff contends that the Corporation may only house federal detainees in the detention facility pursuant to § 45-54-1 et seq.. The defendants contend that the enabling legislation is ambiguous. The defendants assert that under the rules of statutory construction, the Corporation was authorized to house out-of-state prisoners.
"It is hereby declared that a need for economic development projects exists within the state and that the development of a detention facility would help to meet the need for economic development and address the detention facility needs of the United States." § 45-54-2(b). The twin purposes of economic development and serving the detention needs of the United States are apparent from the above section. The Corporation is empowered "[t]o make and enter into all contracts, leases, and other agreements necessary or incidental to the performance of its duties and the execution of its powers under this chapter. . . ." § 45-54-6(a). Federal contracts are "governed by federal procurement procedures" and other contracts are "governed by the procurement requirements of the municipality, if any." § 45-54-6(n). The Corporation may also "do all other acts and do any and all things necessary or convenient to carry out its purposes and exercise the powers given and granted in this chapter." § 45-54-6(s). Other statute sections specify that the municipality must enact a resolution to initiate the Corporation's construction of a detention facility. See
§ 45-54-4 and § 45-54-8. In addition, the municipality may transfer land to the Corporation "upon such terms and conditions as the chief executive officer . . . may deem reasonable and fair. . . ." § 45-54-8(d).
This Court finds that the above statutory framework does not expressly state the type of inmate required to be housed in the detention facility. The Corporation has broad authority to act in the furtherance of its twin purposes of economic development and serving the detention facility needs of the United States. The statutory framework does not expressly state whether the facility must exclusively house federal detainees.
Statutory Construction
The plaintiff argues that even under the rules of statutory construction, the enabling statute indicates the legislature's intent that the detention facility house federal detainees exclusively. The plaintiff argues that the statute's specific omission of authority to house out-of-state inmates is strong evidence that the legislature intended to prohibit the housing of out-of-state inmates. The plaintiff cites the legal doctrines ofejusdem generis and expressio unius est exclusioalterius for this proposition. In addition, the plaintiff points out that extrinsic evidence indicates a legislative intent that the detention facility house only federal detainees. The plaintiff specifically points to the testimony of witnesses who were present at the city council hearings on the detention facility and the statements of officials connected with the detention facility as extrinsic evidence demonstrating legislative intent.
Alternatively, the defendants state that the purpose of economic development and the Corporation's broad powers under the statute allow the Corporation to house out-of-state inmates in the detention facility.
"In construing a statute, our task is to effectuate the intent of the legislature." D'Ambra v. North Providence SchoolCommittee, 601 A.2d 1370, 1374 (R.I. 1992). "This is accomplished from an examination of the language, nature, and object of the statute." Id. Under the doctrine of ejusdemgeneris, "[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." Sutherland Statutory Construction
§ 47.17 at 188 (5th ed.). However "[t]he doctrine of ejusdemgeneris does not apply where the specific terms preceding the general terms share no common characteristic." First RepublicCorporation of America v. Norberg, 116 R.I. 414, 358 A.2d 38, 41 (1976). Similarly, "[w]here a general term appears with no enumeration . . . the rule of ejusdem generis does not apply." Sutherland § 47.20 at 205.
In the instant case, the doctrine of ejusdem generis is not applicable. The two purposes of economic development and meeting the detention needs of the United States are not part of an enumerated list. In addition, both purposes are dissimilar and do not share a common characteristic. Under the reasoning ofFirst Republic Corporation supra, the doctrine of ejusdemgeneris does not apply.
The doctrine of expressio unius exclusio alterius
refers to the principle that "all omissions should be understood as exclusions." Sutherland, § 47.23 at 216. The court "must apply cautiously the principle that express enumeration of items in a statute impliedly excludes all others, so that the principle furthers, rather than defeats, legislative intent." Volpe v.Stillman White Co., 415 A.2d 1034, 1036 (R.I. 1980). The doctrine "is applicable only under certain conditions."Industrial Trust Co. v. Goldman, 59 R.I. 11, 193 A. 852, 855 (1937). The doctrine is not applicable "where an expanded interpretation will accomplish beneficial results . . . [or] is a necessary incidental to a power or right. . . ." Sutherland,
§ 47.25 at 234.
This Court finds that the doctrine of expressio uniusest exclusio alterius is not applicable in the instant case. An interpretation of the enabling statute which allows the housing of out-of-state inmates has a beneficial result in that the Corporation can pay its debt-service. The housing of out-of-state inmates also serves the purpose of economic development. Because the enabling statute stresses economic development and grants the Corporation all necessary power to effectuate this beneficial result, the doctrine of expressiounius est exclusio alterius does not apply.
Finally, in examining extrinsic evidence of the legislature's intent for the enabling statute, one finds mixed testimony. While most of the witnesses characterized the detention facility as a "federal" facility, not all of the witnesses at trial concurred in the plaintiffs assertion that the facility was represented as housing exclusively federal inmates. Two witnesses stated that the housing of out-of-state prisoners was never discussed. "[L]egislative history that is in itself inconclusive will rarely, if ever, overcome the words of a statute." State ofRhode Island v. Narragansett Indian Tribe, 19 F.3d 685, 698 (1st Cir. 1994).
This Court finds that the witnesses' testimony is inconclusive in determining whether the legislature intended to require only federal detainees as inmates within the federal detention facility. The plain words of the statute clearly allow the Corporation to enter into contracts towards the furtherance of its purpose of economic development. See, § 45-54-2(b), § 45-54-6(n). The statute says that the facility will "address the detention facility needs of the United States", but does not say that the facility will "exclusively" address the United States' needs in housing federal detainees. § 45-54-2(b).
In construing the intent of the Legislature, nothing within the enabling statute prohibits the Corporation from accepting out-of-state prisoners. In fact, the statute provides the Corporation with broad powers to ensure it remains a self-sustaining entity. While undoubtedly the statute requires that the Corporation address the detention facility needs of the United States through the corporation seeking to take in federal detainees, it does not require an exclusive federal inmate population at the facility. If the Corporation refused to accept federal inmates and brought in only out-of-state inmates, such a policy would run contrary to the intent of the statute. Such a policy is not in place for the instant case, wherein the population numbers about 80% federal detainees and approximately 20% Suffolk County, Massachusetts prisoners, and the Corporation has made every effort to find more federal inmates.
Authority of the City Council
The plaintiff further argues that the Central Falls City Council has the authority to limit the type of detention facility operated by the Corporation. The plaintiff cites § 45-54-4 and § 45-54-8 as sections which give the city council authority over the type of prisoners housed at the detention facility. The plaintiff states that the city council's resolution on August 5, 1991 to limit the detention facility to federal detainees prohibited the Corporation from bringing out-of-state prisoners to the facility.
The enabling statute specifies that "[t]he corporation shall be a public corporation, which shall be an instrumentality and agency of the municipality, but shall have a distinct legal existence from the municipality, and which shall have such purposes as are consistent with the declaration of purpose herein set out, and which shall have such powers as are necessary and incidental to the effectuation of the purposes stated herein." § 45-54-1(a). Sections 45-54-1(b), (c), 45-54-4 and 45-54-8
pertain to resolutions required of the municipality in order for the Corporation to exist, begin to transact business, and proceed with the development of a detention facility. There are two areas in which the municipality can exact a measure of authority over the Corporation. In all contracts entered into by the Corporation, besides federal contracts, the contracts "shall be governed by the procurement requirements of the municipality, if any." § 45-54-6(n). Also, the municipality may transfer property to the Corporation "upon such terms and conditions as the chief executive officer, if any, with the concurrence of the council . . . may deem reasonable and fair. . . ." § 45-54-8(d). When power is "delegated to a municipality by the General Assembly, this authority may be utilized only to the extent of the power conferred." Vukic v. Brunelle, 609 A.2d 938, 941 (R.I. 1992).
The city council's resolution of August 5, 1991 which purported to limit the detention facility to federal detainees does not derive authority from either § 45-54-6(n) or § 45-54-8(d). The resolution is not directed towards the procurement process for contracts, nor is the resolution an express condition for a conveyance of land to the Corporation. Neither can the plaintiff find statutory authority for the resolution under § 45-54-1 and § 45-54-4. Although the Corporation is an instrumentality of the municipality, subject to specific conditions mentioned above, the Corporation is a separate legal entity with its own powers. § 45-54-1. The municipality must adopt a resolution which "declares[s] that there is a need for the Corporation to function. . . ." as specified under § 45-54-1(b). But this resolution merely brings the Corporation into existence, and does not give the plaintiff substantive power to control the type of inmates the Corporation selects for the detention facility. Section 45-54-4 similarly refers merely to the municipality's resolution which brings the Corporation into existence. Under § 45-54-8(a) the Corporation must make a separate resolution to initiate construction of a detention facility. The provisions of both § 45-54-1 and § 45-54-8 do not allow the municipality to attach conditions to the resolutions. In any event, the resolution which purported to limit the detention facility to federal detainees was not made a part of either the declaration declaring a need for the Corporation (resolution pursuant to § 45-54-1 and § 45-54-4) or the resolution authorizing construction of a detention facility (as specified under § 45-54-8).
Because this Court can find no statutory authority within the enabling legislation for the City of Central Falls' resolution to limit detention facility inmates to federal detainees, this Court must assess what effect an independent municipal resolution has on state legislation. Municipalities may not legislate on matters of state-wide concern. Marro v. General Treasurer of the City ofCranston, 108 R.I. 192, 273 A.2d 660, 662 (1971). The enabling statute in the instant case was enacted on a state-wide basis, offering the opportunity for any of the municipalities in the state to construct a detention facility. § 45-54-1. The municipal resolution of August 5, 1991 which purported to restrict the detention facility to federal detainees was without effect because the Rhode Island General Assembly has enacted state-wide legislation on the subject matter. Id. The City of Central Falls had neither the statutory authority nor its own municipal power of legislation to limit the type of prisoners.
The Corporation's Bond Debt
The plaintiff argues that the Corporation's bond indebtedness should have no bearing on the issue of whether the Corporation has the authority to house out-of-state prisoners. The defendants respond that the Corporation's indebtedness to the Port Authority is important because a default by the Corporation could negatively affect the state's credit rating. The defendants argue that avoiding default is a necessary power of the Corporation. The defendants point out that the Supreme Court, in its order allowing the Port Authority to intervene in the instant case, stated that "attention should be focused upon the bonded indebtedness of the Detention Facility as well as the ability of the Detention Facility to continue to operate if it is not able to take prisoners from other jurisdictions than the federal government." City of Central Falls v. Central Falls DetentionFacility Corporation, Et Al, No. 95-102 — Appeal — (PC 94-3939) (R.I., filed December 14, 1995).
The above order cited by the defendants was specifically limited to deciding whether the Port Authority should be allowed to intervene. The specific issues mentioned by the Supreme Court serve to bolster the court's decision to allow the Port Authority to intervene by right. However, the plaintiff's assertion that the issue of bond indebtedness has no bearing on the instant case is not entirely correct.
One of the purposes underlying the enabling legislation is economic development. The bonded indebtedness of the Corporation certainly has an impact on its ability to further the purpose of economic development. This Court finds that, in light of the broad powers conferred upon the Corporation by the legislature, the legislature intended the Corporation to have the power to enter into any and all contracts which would enable the detention facility to continue to operate. See § 45-54-6(n), (s). In looking at the statute as a whole, this Court finds that nothing prohibits the housing of out-of-state prisoners, and several sections grant the Corporation the power to sustain itself as an economically sound entity. See § 45-54-6, § 45-54-8, § 45-54-9, § 45-54-10, and § 45-54-12. Finally, the statute requires a liberal construction of its provisions "so as to effectuate its purposes," one of which is economic development. § 45-54-25.
Conclusion
This Court finds that the Central Falls Detention Facility is not required exclusively to house federal inmates in its facility but is only required to address the United States' federal prisoner needs and make good faith efforts to fill those needs. This Court further finds that the city council has no independent authority or statutory authority to restrict the type of prisoner within the detention facility. Finally, this Court finds that under the liberal construction required under the statute, the Corporation has the authority to enter into contracts with other states to house out-of-state prisoners in the detention facility. The plaintiff must demonstrate a likelihood of success on the merits for an issuance of injunctive relief. In Re StateEmployees Unions, 587 A.2d 919, 925 (R.I. 1991). This Court finds that the plaintiff has not succeeded.
Accordingly, the plaintiffs request for injunctive relief and specific performance is denied. Counsel shall prepare the appropriate judgment for entry.